| | |
|---|---|
| FEDERALPHA STEEL LLC CREDITORS' TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 06 C 3188 |
| FEDERAL PIPE & STEEL CORPORATION, RUSSEL METALS, INC., GILLES LEROUX, and SYLVAIN GARNEAU, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before me is a joint motion brought under Federal Rules of Civil Procedure 12(b)(6) and 9(b) by defendants Federal Pipe & Steel Corporation ("Federal Pipe"), Russel Metals, Inc. ("RMI"), Gilles Leroux, ("Leroux"), and Sylvain Garneau ("Garneau") to dismiss the complaint brought by Federalpha Steel LLC Creditors' Trust (the "Trust"). For the reasons stated in this opinion, I grant defendants' motion in part and deny it in part.

I.

Because the Trust's complaint is complicated and raises numerous claims, its allegations and the relationship between the parties bear some explanation. The following facts are taken from the allegations in the complaint, as well as the documents, described below, that I may consider in ruling on defendants' motion to dismiss.

A.    Organization and Operation of Federalpha

At all times relevant to the Trust's complaint, Federal Pipe operated a network of steel service centers throughout the United States.    In 2002 it partnered with Alpha Steel ("Alpha"), a company that owned a single steel service center in Indiana, to organize Federalpha Steel LLC ("Federalpha"), an Illinois limited liability company ("LLC") that would own and operate three steel service centers in Illinois, Michigan and Indiana.

On July 9, 2002, Federal Pipe and Alpha executed an operating agreement for Federalpha (the "Operating Agreement").    Under the terms of that agreement, Federal Pipe and Alpha designated FA Steel Management, Inc. ("FA") to manage Federalpha.    FA was organized as an Illinois corporation, wholly owned by Federalpha, with a four-person board of directors comprised of two directors from Alpha and two directors from Federal Pipe.[1]    Paragraph 5.1.2 of the Operating Agreement gave FA the "full, exclusive, and complete discretion, power, and authority . . . to manage, control, administer, and operate the business and affairs of [Federalpha] . . . and to make all decisions affecting such business and affairs."    This authority gave FA the right to "manage and operate the Principal Business of [Federalpha]" and the right to "enter into agreements and contracts and to give receipts, releases and discharges."    Section 5.1.4.1 of

---

[1]Federal Pipe's two representatives on the board of directors were defendants Leroux and Garneau.

the Operating Agreement also provided that neither Federal Pipe nor Alpha was an agent of Federalpha, and neither had the authority to act for Federalpha. Further, Section 5.1.4.2 provided:

> This Section 5.1 supersedes any authority granted to Members[2] pursuant to [the Illinois Limited Liability Company Act, 805 ILL. COMP STAT. 180/1, et seq.]. Any Member who takes any action or binds [Federalpha] in violation of this Section 5.1 shall be solely responsible for any loss and expense incurred by [Federalpha] as a result of the unauthorized action and shall indemnify and hold [Federalpha] harmless with respect to the loss or expense.

The Trust alleges that, although the Operating Agreement provided that Federal Pipe had no authority to act on behalf of Federalpha and had the "passive status" of a "non-managing member[]," "Federalpha actually was run as a joint venture or partnership in which Federal Pipe exercised active *de facto* management authority over Federalpha." Federal Pipe exercised control over Federalpha by unconditionally guaranteeing Federalpha's obligations to its lenders and by helping Federalpha obtain trade credit.

The Trust also makes a series of allegations about actions that the Operating Agreement required of Federal Pipe but that Federal Pipe failed to take. For instance, the Trust alleges that Federalpha was undercapitalized, and that, had Federalpha's trading partners known this, they would not have extended trade credit to

---

[2]Under the terms of the agreement, Federal Pipe and Alpha were the two "Members" of Federalpha.

3

Federalpha. It further contends that Federal Pipe failed to make required contributions of cash, property and services to Federalpha as required by the Operating Agreement and as necessary for Federalpha to "have a reasonable chance of achieving operating success."

B. Federal Pipe's Withdrawal from Federalpha

The Trust contends that events in 2003 led to Federal Pipe's withdrawal from Federalpha. In the first quarter of 2003, defendant RMI made an unsolicited takeover bid for Leroux Steel, the corporate parent of Federal Pipe.[3] RMI and Leroux Steel entered into a merger agreement in April of 2003. The Trust alleges that at the date of the Agreement, "RMI reviewed Federal Pipe's operations and concluded that Federalpha was an unprofitable enterprise which faced possible insolvency and needed to be liquidated." Therefore, the Trust alleges that Federal Pipe, acting under the direction of RMI and with the intent to adversely affect Federalpha and its creditors, "made a de facto withdrawal from Federalpha, ceasing to honor its duties and obligations under the Operating Agreement, and otherwise terminating its involvement with Federalpha."

This de facto withdrawal was accomplished prior to Federalpha's bankruptcy. In July of 2003, RMI completed its

---

[3]Defendant Leroux was the Chairman, President, and CEO of Leroux Steel.

4

acquisition of Leroux Steel, and that same month acknowledged internally that Federalpha might enter bankruptcy. On September 30, 2003, Federal Pipe, Alpha, PHA Steel LLC ("PHA Steel") and Federalpha entered into an agreement (the "Withdrawal Agreement") purporting to allow Federal Pipe to withdraw as a "Member" of Federalpha. Under the terms of the Withdrawal Agreement, PHA Steel agreed to provide a certificate of deposit ("COD") for $1.58 million dollars in connection with obtaining funding for Federalpha from certain lenders. Federal Pipe was required to fund a $1,000,000 COD and to pledge it in favor of those lenders as "collateral for [Federal Pipe's] non-recourse guaranty, until such time as [Federalpha's] indebtedness to the [lenders] is satisfied in full." In addition, Federal Pipe agreed to assume certain of Federalpha's liabilities, including liabilities at an Illinois facility and for certain employment matters. Federal Pipe agreed that upon the release of its guaranty and the termination of the Operating Agreement, it would pay Federalpha $170,000 to settle "all outstanding accounts and charges" between Federalalpha and Federal Pipe and its affiliate Leroux Steel. Federal Pipe further agreed that it would assign its membership interest in Federalpha to Alpha and assign the subordinated debt Federalpha owed it to PHA. The Trust alleges, however, that the agreement to fund this COD did not actually provide consideration to Federalpha because Federal Pipe had already provided an unconditional guaranty of

5

Federalpha's debts. In addition, although the agreement purported to provide that Federal Pipe would assume certain obligations, the Trust contends that this was also illusory because Federal Pipe was already primarily liable for those obligations.

Under the terms of the Withdrawal Agreement, Federalpha agreed to remain responsible for certain liabilities. Alpha also agreed to terminate the Operating Agreement, and indemnify Federal Pipe, per a provision in the Operating Agreement, as if Alpha had acquired all of Federal Pipe's membership rights under that provision.

Importantly, Paragraph 18 of the Withdrawal Agreement provided:

> This Agreement sets forth all of the agreements, undertakings, representations and warranties of the parties with respect to the subject matter of this Agreement. It is the intention of the parties that, subject to compliance with the terms of this Agreement, that [Federalpha], Alpha, and PHA, on the one hand, and Federal [Pipe] on the other hand, shall have no other claims against one another (or one another's affiliates, officers or employees) by reason of any matter related to [Federalpha], and accordingly, such claims as otherwise might exist and are not provided for herein are hereby released and discharged, provided that [Federalpha's] subordinated debt obligation to Federal [Pipe], as described in paragraph 3(h) above, is not being released but is being assigned to PHA hereunder.

The Trust alleges that the Withdrawal Agreement was improperly executed because, under the terms of the Operating Agreement, FA Steel had the exclusive authority to execute agreements and

6

releases, but Paul Athens, President of Federalpha, and not FA
Steel executed the Withdrawal Agreement on Federalpha's behalf.

C. Formation of the Trust and Proceedings in Bankruptcy Court

The Withdrawal Agreement closed on October 20, 2003. One day
later, on October 21, 2003, Federalpha filed a petition for relief
under Chapter 11 of the United States Bankruptcy Code in the United
States Bankruptcy Court for the Northern District of Illinois (the
"bankruptcy court"). Federalpha also filed an Amended Plan of
Reorganization (the "reorganization plan"). Section 1.8 of the
reorganization plan assigned the Trust

> all causes of action owned by the Debtor
> against former insiders of the Debtor, but
> specifically excluding the Debtor's causes of
> action (i) against the Alpha Insiders and
> those insiders otherwise released under this
> Plan, (ii) arising under section 547 of the
> Bankruptcy Code, and (iii) for indemnification
> against Federal Pipe and Steel Corporation.

The Trust subsequently filed an adversary complaint in the
bankruptcy proceeding asserting its claims in this action. The
defendants filed motions to dismiss the counts, and the bankruptcy
court determined that it lacked subject matter jurisdiction or
would otherwise abstain from hearing the Trust's claims. See
Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp.
(In re Federalpha Steel LLC), 341 B.R. 872 (Bankr. N.D. Ill. 2006).

D. The Trust's Present Lawsuit

The Trust subsequently brought the present action, bringing
multiple claims against defendants. Counts I and II are claims

7

against Federal Pipe for avoidance of a release for actual fraud and constructive fraud under 11 U.S.C. §§ 548(a)(1)(A) and (B). Count III is a claim against Federal Pipe for breach of the Withdrawal Agreement by failing to assume certain of Federalpha's pension liabilities. Count IV is a claim against Federal Pipe for a breach of the Illinois Limited Liability Company Act ("Illinois LLC Act") for failing to make required contribution of property and services under 805 ILL. COMP. STAT. 180/20-5(c). Counts V and VI are claims against Federal Pipe for breach of the Operating Agreement by wrongfully dissociating from Federalpha and by violating the Operating Agreement's non-competition clause. Count VII is a claim against Federal Pipe for breach of its fiduciary duties under the Illinois LLC Act, 805 ILL. COMP. STAT. 180/15-3. Count VIII is a claims against Leroux and Garneau for breaching their fiduciary duties to Federalpha. Counts IX and X are claims against RMI for intentional interference with contract and inducement of breach of fiduciary duty. Finally, Counts XI and XII are claims against Federal Pipe for intentional and negligent misrepresentations and omissions to creditors regarding Federalpha's credit worthiness.

II.

In assessing defendants' motion to dismiss, I must accept all well-pled facts in the Trust's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to

8

the Trust. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of a claim is proper only if the Trust can prove no set of facts to support that claim. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). My review is limited to the pleadings on file, so I must exclude from my analysis any factual assertions either party made in their papers related to the motion to dismiss. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). Written instruments attached to the complaint are considered to be part of the complaint. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Here, the Trust has attached to its complaint copies of the Operating Agreement and Withdrawal Agreement, so I may consider those written instruments to be a part of the Trust's complaint. When a judge considers documents outside of the complaint, she normally must convert the defendant's motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). However, "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, defendants have attached to their memorandum in support of their motion to dismiss a copy of a document entitled "Federalpha Steel

9

LLC's Amended Plan of Reorganization." Because this document is referenced in the Trust's complaint and is central to its claims, since it dictates the Trust's authority to bring claims formerly belonging to Federalpha, I may consider this document without converting defendants' motion to a motion for summary judgment. *Id.*

### III.

Defendants have raised arguments why each of the Trust's claims should be dismissed. Before addressing these claims, I first address the relevant Illinois law governing LLCs and the provisions of the Operating Agreement that defendants rely upon to argue as a general matter that the Trust's complaint must be dismissed.

According to the Operating Agreement, Federal Pipe and Alpha organized Federalpha as an LLC with a "Manager Governance Construct" (Paragraph 5.1.1.1) in which Federal Pipe and Alpha, as members of Federalpha, were "treated as 'shareholders' of FA, the Manager of Federalpha, "notwithstanding the fact that, legally, the sole shareholder of [FA] is, and shall remain, [Federalpha]." Under Paragraph 5.1.2 of the Operating Agreement, Federalpha had the "full, exclusive, and complete discretion, power, and authority" to control Federalpha. Also under Paragraph 5.1.4, the members were not agents of Federalpha and had no authority to act for Federalpha "solely by virtue of being a Member."

10

Defendants argue that these provisions demonstrate that the Trust's claims cannot survive their motion to dismiss. Under Illinois law, a member or manager of an LLC "is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILL. COMP. STAT. 180/10-10(a). A member of an LLC is liable for the LLC's debts in its capacity as a member only if the LLC's articles of organization contain a provision to that effect, and the member has consented in writing to be bound by that provision. 805 ILL. COMP. STAT. 180/10-10(d). Further, the failure of an LLC to observe "the usual company formalities or requirements relating to the exercise of company powers" is not a ground for imposing personal liability on the members or managers for the LLC's liabilities. 805 ILL. COMP. STAT. 180/10-10(c).

The provisions of Illinois law governing LLCs also differentiate between "member-managed" LLCs and "manager-managed" LLCs. In a member-managed LLC, each member has an equal right in the management and conduct of the LLC's business, and matters relating to the LLC's business are decided by a majority of the members. 805 ILL. COMP. STAT. 180/15-1(a). In a manager-managed company, each *manager* has an equal right in the management and conduct of the LLC's business. 805 ILL. COMP. STAT. 180/15-1(b)(1). This distinction matters because the members of a member-managed LLC owe duties to the LLC, including a duty of loyalty, a duty to

11

act fairly when dealing with the LLC, and a duty not to compete with the LLC. 805 ILL. COMP. STAT. 180/15-3(b). A member (that is not also a manager) of a manager-managed LLC, in contrast, "owes no duties to the [LLC] or to the other members solely by reason of being a member." 805 ILL. COMP. STAT. 180/15-3(g)(1).

Defendants contend that Federalpha was a manager-managed LLC, pointing to the provisions in the Operating Agreement giving FA sole control over Federalpha's affairs. The Trust does not contest that the Operating Agreement so provides, but instead argues that Federalpha exhibited at least some characteristics of a member-managed LLC because the Operating Agreement prohibited the voluntary withdrawal or dissociation of either member. Under Section 6.2 of the Operating Agreement:

> No Member shall have the right to Voluntarily
> Withdraw from the Company and any Member who
> shall voluntarily withdraw shall be deemed to
> be in intentional breach of this Agreement and
> such Member's withdrawal shall constitute a
> wrongful dissociation from the Company within
> the meaning of Section 35-50 of the Act.

The language "Section 35-50 of the Act" refers to 805 ILL. COMP. STAT. 180/35-50, which provides that members of member-managed LLC may dissociate from the LLC, and that dissociation is only wrongful if "it is in breach of an express provision of the agreement." 805 ILL. COMP. STAT. 180/35-50(b). The reference in the agreement to this provision concerning member-managed LLCs might suggest that

the parties considered Federalpha to be a member-managed LLC, or at least not entirely a manager-managed LLC.

Moreover, the Operating Agreement is not the only relevant document for determining whether Federalpha is treated as member-managed or manager-managed.[4] The Illinois LLC Act defines a "manager-managed company" as a "limited liability company which is so designated in its articles of organization." 805 ILL. COMP. STAT. ANN. 180/1-5. The Act defines a "member-managed company" as "a limited liability company other than a manager-managed company." *Id.* Here, the parties have not provided a copy of the articles of organization for Federalpha, so I cannot definitively determine how that document defines Federalpha. Further, the Trust alleges in Paragraph 20 of the complaint that "Federalpha actually was run as a joint venture or partnership in which Federal Pipe exercised active *de facto* management authority over Federalpha." Taking the Trust's allegations as true, Federalpha could be seen as a quasi member-managed LLC, or a de facto member-managed LLC. Therefore, I cannot conclude, as defendants urge, that Federalpha was a manager-managed LLC and that Illinois law concerning manager-managed LLCs applies here. It is possible, taking the Trust's allegations as true, that Federalpha could be governed by the rules

---

[4]Defendants point out that the title section of the first page of the Operating Agreement states: "OPERATING AGREEMENT OF FEDERALPHA STEEL LLC [Manager-Managed]" but this title is not dispositive as to how Federalpha was actually organized or governed.

concerning member-managed LLCs which would not foreclose those claims that defendants argue are foreclosed for manager-managed LLCs.

In addition, several of the Trust's claims, and the defendants' arguments that those claims should be dismissed, depend upon the Withdrawal Agreement. Defendants argue that the Trust has no standing to pursue many of its claims because those claims were released by the Withdrawal Agreement. The Trust may only pursue claims held by Federalpha and specifically assigned to the Trust under Federalpha's reorganization plan. *See D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 259-60 (7th Cir. 1997). Section 1.8 of Federalpha's reorganization plan assigned to the Trust "all causes of action owned by the Debtor against former insiders of the Debtor, but specifically excluding the Debtor's causes of action (i) against the Alpha Insiders and those insiders otherwise released under this Plan, (ii) arising under section 547 of the Bankruptcy Code, and (iii) for indemnification against Federal Pipe and Steel Corporation." Defendants contend that some of the claims the Trust has raised here are not claims that were "owned by the Debtor" at the time the reorganization plan was approved because those claims were waived when Federalpha agreed in the Withdrawal Agreement that it "shall have no other claims" against Federal Pipe other than to ensure compliance with the Withdrawal Agreement itself. Although some of

14

the Trust's claims do concern compliance with the Withdrawal Agreement and bring claims against parties other than Federal Pipe, the Trust also asserts in the alternative that the Withdrawal Agreement is not valid because FA, the manager for Federalpha, was not a party to the Withdrawal Agreement and did not execute the agreement on Federalpha's behalf. The Trust alleges that the Withdrawal Agreement was executed on Federalpha's behalf by Federalpha's president. Under Section 5.1.2.4 of the Operating Agreement, FA had the "full, exclusive, and complete discretion, power, and authority . . . [including] the power to enter into agreements and contracts and to give receipts, releases, and discharges." Given this language in the Operating Agreement, the Trust has a cognizable argument as reflected in its allegations, that the Withdrawal Agreement is without force and that the purported release of claims against Federal Pipe in that Agreement were invalid. Whether or not this allegation is correct is an issue to be litigated, but for purposes of a motion to dismiss, defendants' arguments concerning the Withdrawal Agreement do not support a dismissal.[5]

---

[5]Defendants also urge that, because the validity of the Withdrawal Agreement has not yet been determined, the releases in the Withdrawal Agreement should be given full force and effect, and Federal Pipe should have the "benefit of its bargain" until the Withdrawal Agreement is determined to be invalid. However, defendants cite no authority supporting this approach.

15

With these principles in mind, I consider each of the Trust's individual claims in turn.  Because resolution of defendants' arguments to dismiss Counts I and II of the Trust's complaint depend on the validity of defendants' arguments concerning Counts IV and V, I address those counts first.

A.  Count IV: Failure to Contribute Property or Services

Count IV of the Trust's complaint alleges that Federal Pipe failed to make required contributions of property or services to Federalpha in violation of 805 ILL. COMP. STAT. 180/20-5(c).  The Trust alleges that the contributions that Federal Pipe was required to but did not make include (1) its undercapitalization of Federalpha; (2) its failure to make required cash contributions; (3) its *de facto* withdrawal following the Lock Up Agreement; and (4) its formal withdrawal under the Withdrawal Agreement.[6] Defendants argue that the Trust has not alleged, and cannot show under any of the relevant documents governing Federal Pipe's obligation to Federalpha, that Federal Pipe had any obligation to contribute property or services to Federalpha, and also argues that this is an individual creditor's claim that the Trust has no standing to bring.  I agree that the Trust has not alleged facts

---

[6]The allegations concerning the propriety of Federal Pipe's *de facto* and formal withdrawals are addressed in Count V below.  For this claim, the relevant question is whether, in withdrawing from Federalpha, Federal Pipe failed to make required contributions.

16

that show, as a legal matter, that Federal Pipe had an obligation to make these "contributions" to Federalpha.

Defendants' primary argument for dismissing this claim is that Federal Pipe had no obligation under the Operating Agreement to make any contributions to Federalpha. The sections of the Illinois LLC Act that the Trust cites in its complaint, and that it cites in its response to defendants' motion to dismiss, support defendants' argument. The Illinois LLC Act provides:

> (c) A member's obligation to contribute money, property, or other benefit to, or to perform services for, a limited liability company is not excused by the member's death, disability, or other inability to perform personally. If a member does not make the required contribution of property or services, the member is obligated at the option of the company to contribute money equal to the value of that portion of the stated contribution which has not been made.

805 ILL. COMP. STAT. 180/20-5. In Paragraph 110 of its complaint, the Trust alleges that defendants violated this provision of the Illinois LLC Act by failing to make required contributions. However, this section of the Illinois LLC Act does not impose a legal obligation on members of an LLC to make contributions. It simply provides that, if a member has an obligation to make contributions of money or property, those obligations are not excused by death or disability, and a member may be obligated at the option of the LLC to make those contributions. A reliance on this section of the Act is not sufficient.

In its response to defendants' motion to dismiss, the Trust reframes Count IV as a claim for breach of the Operating Agreement, even though in its complaint this count is clearly identified as a "Violation of the Limited Liability Act." Under either conception of this claim, Count IV of the Trust's complaint is deficient because the Trust has not alleged facts that, if true, would show that Federal Pipe had any obligation under the Operating Agreement to contribute property or services to Federalpha. Despite alleging that Federal Pipe was required to capitalize Federalpha, make cash contributions, and not withdraw from Federalpha, the Trust has pointed to no specific provision of the Operating Agreement that would provide such an obligation, nor could this court locate one. Although the Trust contends that this is a factual question, the interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage. *See Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006) (holding that the interpretation of an unambiguous contract is a question of law).

In the alternative, the Trust's response to defendants' motion to dismiss contends that this claim can survive because Federal Pipe "unconditionally guaranteed Federalpha's obligations to its lenders" and that "[b]ut for Federal Pipe's unconditional guaranty, Federalpha could not have obtained bank credit." Approaching its claim from this angle does not save the claim, however. First, as

18

defendants urge, the Trust lacks standing to pursue this claim because any claim predicated upon guarantees Federal Pipe made to Federalpha's lenders are claims that belong solely to Federalpha's lenders. The Trust, as the trustee of a debtor's estate, can bring any action in which the debtor has an interest, and can bring suit on behalf of creditors in general. *See Koch Ref. v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1349 (7th Cir. 1987). The Trust may not bring "personal claims of creditors," which are claims that a particular creditor has been harmed and in which no other claimant or creditor has an interest. *Id.* Importantly, "[i]f the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim." *Id.* (internal citation omitted). To determine whether an action accrues generally or individually, a court should "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors." *Id.* Following this analysis, the Seventh Circuit held in *Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994), that "[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. [The trustee] has no interest in the suit." *Id.* at 893. Here, the Trust cannot show that Federal Pipe had any obligation to Federalpha to make contributions, so any allegation that Federal

19

Pipe represented to Federalpha's lenders that it would do so is a claim that belongs solely to Federalpha's lenders and not to Federalpha. Therefore, I agree that the Trust lacks standing to bring this claim on behalf of lenders to whom Federal Pipe purportedly made a promise.[7] For these reasons, I grant defendants' motion to dismiss this claim.

B. Count V: Wrongful Dissociation

Count V of the Trust's complaint alleges that Federal Pipe breached Paragraph 6.2 of the Operating Agreement by wrongfully dissociating from Federalpha. The Trust points to two separate "withdrawals" that constituted wrongful dissociations: the "*de facto* withdrawal following the Lock Up Agreement" and the formal withdrawal pursuant to the Withdrawal Agreement. I deny defendants' motion to dismiss this claim.

Under the Illinois LLC Act, a member who wrongfully dissociates from a member-managed LLC is liable to the LLC and the

---

[7]The Trust's complaint also alleges that defendants violated 805 ILL. COMP. STAT. 180/20-5(d). That provision provides:

> A creditor of a limited liability company who extends credit or otherwise acts in reliance on an obligation described in subsection (c), and without notice of any compromise under subdivision (4) of subsection (c) of Section 15-1, may enforce the original obligation.

However, this allegation presents the same problem because this provision only gives creditors a cause of action if the member has an obligation to contribute goods or services to the LLC, and here the Trust cannot make this showing.

20

other members for damages caused by its dissociation. 805 ILL. COMP. STAT. 180/35-50(c). Dissociation is only "wrongful" under the Illinois LLC Act if it "is in breach of a specific provision of the [operating] agreement." 805 ILL. COMP. STAT. 180/35-50(b). Defendants contend that no provision of the Operating Agreement prohibits either their alleged *de facto* withdrawal or withdrawal pursuant to the Withdrawal Agreement. Paragraph 6.2 of the Operating Agreement provides that no Federalpha member may "Voluntarily Withdraw" from Federalpha, and that "Voluntary Withdrawal" is considered wrongful dissociation under the Illinois LLC Act. Section I of the Operating Agreement defines "Voluntary Withdrawal" as "a Member's dissociation with [Federalpha] by means other than by a Transfer or Involuntary Withdrawal, except as provided in Section 6.5 of this Agreement."[8] Section I of the Operating Agreement defines a "Transfer" as "any voluntary sale, hypothecation, pledge, assignment, attachment, or other transfer." Defendants argue that the Withdrawal Agreement was a "Transfer" and as such is not a violation of the Operating Agreement. However, I agree with the Trust that it has properly alleged that the Withdrawal Agreement was not valid, so that any withdrawal Federal

---

[8]"Involuntary Withdrawal" and provisions of Section 6.5 referenced in the definition are inapplicable here. An "Involuntary Withdrawal" is defined in Section I of the Operating Agreement as certain events causing a member to withdraw (such as expulsion, etc.). Section 6.5 of the Operating Agreement concerns a "Mutual Forced Buy-Sell Procedure." Neither side contends that either is relevant here.

Pipe attempted pursuant to the Withdrawal Agreement may also be invalid.

In addition, taking the well-pled facts in the Trust's complaint as true, the Trust has sufficiently alleged that Federal Pipe's "*de facto* withdrawal" was a violation of the Operating Agreement. Defendants contend that the Trust has not (and cannot) show how Federal Pipe breached any obligation to Federalpha by any *de facto* withdrawal since, in its view, because Federalpha was managed entirely by FA, Federal Pipe had no obligation to Federalpha under the Operating Agreement. In addition, defendants contend that a *de facto* withdrawal is not a "dissociation" under the Illinois LLC Act because the Act contemplates an active effort to remove a member's association with the LLC (such as severing membership interests or taking away property contributed to the LLC) as opposed to "disinterest in the continuing affairs" of the LLC. But defendants cite no law in support of their argument, and this court has found no law limiting the definition of "dissociation" in the way defendants seek to limit it. Further, the Trust has alleged in Paragraph 44 of its complaint that Federal Pipe's *de facto* withdrawal was accomplished by ceasing participation in Federalpha's management, ceasing honoring its duties and obligations under the Operating Agreement, and otherwise terminating its involvement with Federalpha. Taking these allegations as true, the Trust has stated a claim for wrongful

dissociation, so defendants' motion to dismiss this claim is denied.[9]

C.   Count I: Actual Fraud under 11 U.S.C. § 548(a)(1)(A)

Under 11 U.S.C. § 548(a)(1)(A), the trustee of a debtor may avoid a transfer of an interest of the debtor in property made within two years before the date of the filing of a petition for bankruptcy, if the debtor

> made such transfer or incurred such obligation
> with actual intent to hinder, delay, or
> defraud any entity to which the debtor was or
> became, on or after the date that such
> transfer was made or such obligation was
> incurred, indebted.

The Trust alleges that in the Withdrawal Agreement Federalpha purported to release certain interests in property to Federal Pipe, including claims against Federal Pipe for Federal Pipe's undercapitalization of Federalpha, Federal Pipe's failure to make contributions to Federalpha, Federal Pipe's withdrawal from Federalpha, and Federal Pipe's dissociation from Federal Pipe. The Trust further alleges in Paragraph 89 that the release contained in

_____

[9]The Trust has also brought a claim against RMI for intentional interference with contract (Count IX), alleging that RMI interfered with the Operating Agreement and with Federal Pipe's duties under that agreement by causing Federal Pipe to make a *de facto* withdrawal from Federalpha and later by causing Federal Pipe to formally withdraw from Federalpha under the Operating Agreement. Defendants' only argument why this claim should be dismissed is that the Trust has no claim against Federal Pipe for breaching the Operating Agreement under Count V. Since I determine that Count V does state a claim, I deny the defendants' motion to dismiss Count IX.

23

the Withdrawal Agreement was "an intentional attempt by Federal Pipe to hinder, delay or defraud Federalpha's creditors by releasing Federal Pipe from its liabilities to Federalpha in exchange for little or no value."

Defendants make several arguments why this claim must be dismissed. First, defendants contend that Federalpha never had the claims against Federal Pipe that the Trust alleges Federalpha released. In addition, defendants contend that the Trust has not satisfied the requirements of FED. R. BANKR. P. 7009(b) because it has not pled this claim with specificity. Defendants first argument is partially correct, although its second argument is without merit, so I deny defendants' motion to dismiss this claim.

First, the Trust has alleged facts that, if true, would show that Federalpha had claims against Federal Pipe which it purported to release through the Withdrawal Agreement. The Trust alleges that Federalpha improperly released its claims that Federal Pipe (1) undercapitalized Federalpha; (2) failed to make required contributions of services and/or property to Federalpha; (3) improperly withdrew from Federalpha; and (4) dissociated from Federalpha. These are essentially the claims independently raised by the Trust in Counts IV and V of its complaint. As discussed above with respect to Count IV, the Trust has no claim that Federal Pipe undercapitalized Federalpha or failed to make require contributions of services and/or property to it. Therefore,

Federalpha could not have improperly released those claims. However, Federalpha could have a valid claim for improper withdrawal and dissociation as discussed above concerning Count V. Therefore, Federalpha has stated a valid claim under § 548 for the improper release of those two claims.

Further, defendants' argument concerning the heightened pleading standing of Bankruptcy Rule 7009(b) does not doom this claim. Rule 7009(b)'s heightened pleading standard does apply to claims under § 548(a)(1)(A). *See Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.)*, 279 B.R. 230, 235 (Bankr. N.D. Ill. 2002). Under this standard, "it is not necessary that a plaintiff expressly plead each element of fraud, so long as the circumstances which may constitute fraud have adequately been set forth. . . . A complaint need only allege the basic outline of fraud and indicate who made the misrepresentations and the time and place the misrepresentations were made." *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 875 (Bankr. N.D. Ill. 2004) (citing *Midwest Grinding, Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *Vicom v. Harbridge Merch. Servs, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (2d Cir. 1992)). Here, the Trust has met these requirements by alleging that the Withdrawal Agreement itself, signed by Federalpha and Federal Pipe on September 30, 2003, constituted fraud against Federalpha's creditors and that Federal Pipe intended to defraud

those creditors. Defendants' motion to dismiss does not articulate what more the Trust was required to plead about this allegation. As the Trust points out, a party alleging a fraudulent conveyance frequently will have no direct evidence of fraud and therefore cannot plead direct evidence of fraud. Instead, a party may, as the Trust has done here, plead that "badges of fraud," or circumstantial evidence, were present that indicate that the conveyance was fraudulent. *See, e.g., Frierdich v. Mottaz (In re Frierdich)*, 294 F.3d 864, 869-70 (7th Cir. 2002) (noting that these badges include "whether the transferee shared a familial or other close relationship with the debtor, whether the debtor received consideration for the transfer . . . [and] whether the debtor made the transfer before or after being threatened with suit by creditors").

Therefore, I deny defendants' motion to dismiss Count I of the Trust's complaint.

D.  Count II: Constructive Fraud under 11 U.S.C. § 548(a)(1)(B)

The Trust has also brought a claim against Federal Pipe for constructive fraud (a claim similar to the Trust's claim under Count I for actual fraud) under 11 U.S.C. § 548(a)(1)(B). Under this provision, the Trust may avoid transfers from Federalpha made within two years of the date of the filing of its petition for bankruptcy if Federalpha voluntarily or involuntarily

26

(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). At the heart of this claim is the release of the same four claims raised as Counts IV and V of the Trust's complaint. As discussed above, the claims raised in Count V (the allegations of wrongful withdrawal and dissociation) are potentially valid claims, but the claims raised in Count IV (the failure to contribute property or services to Federalpha) are not. So, at least with respect to the claims in Count V, I must consider the defendants' specific arguments why this claim should be dismissed.

The Trust has alleged that it may avoid the releases contained within the Withdrawal Agreement because the Trust received less

27

than reasonably equivalent value in exchange for these releases. In their motion to dismiss, defendants argue that the terms of the Withdrawal Agreement demonstrate that Federalpha did receive reasonably equivalent value in exchange. Defendants argue that, under the terms of the Withdrawal Agreement, in exchange for a release of certain claims against it, Federal Pipe agreed to provide certain items back to Federalpha, including payment of $170,000, the assumption of liabilities of an Illinois facility, and the assumption of certain pension obligations (as addressed in the discussion below of Count III). In addition, Federal Pipe gave up any claims for indemnification it might have against Federalpha. However, while the terms of the Withdrawal Agreement do suggest that Federal Pipe gave up *something* in exchange for Federalpha's release of claims against it, the relevant question is whether what Federal Pipe gave up in exchange was of reasonably equivalent value. "Reasonably equivalent value" is not defined by § 548, and is a question of fact. *See, e.g.*, *Krol v. Wilcek* (*In re H. King & Assocs.*), 295 B.R. 246, 283 (Bankr. N.D. Ill. 2003) (internal citations omitted); *see also Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) ("We have held that the formula for determining reasonably equivalent value is not a fixed mathematical formula; rather, the standard for '[r]easonable equivalence should depend on all the facts of each case,' an important element of which is fair market value.") (internal citations omitted). Even

28

assuming that the Withdrawal Agreement accurately states what Federal Pipe exchanged for Federalpha's release of all claims it held against Federal Pipe, the value of the promises exchanged is a question of fact which is not resolved on the face of the complaint, other than the Trust's specific allegation that the release was not exchanged for reasonably equivalent value. This allegation states a claim for constructive fraud under § 548. Therefore, I deny defendants' motion to dismiss Count II.

E. Count III: Breach of the Withdrawal Agreement

The Trust contends in Count III of its complaint that Federal Pipe breached its obligations under the Withdrawal Agreement by not assuming certain liabilities under ERISA. In Paragraph 3(d) of the Withdrawal Agreement, Federal Pipe agreed to assume certain liabilities under ERISA. In Paragraph 12, Federal Pipe agreed to indemnify Federalpha from liability it incurred arising out of any liability (including the ERISA liabilities) that Federal Pipe assumed. Defendants respond that this claim should be dismissed because the reorganization plan did not assign claims for indemnification to the Trust and the Trust therefore lacks standing to assert it. In fact, Section 1.8 of the reorganization plan specifically excluded claims for indemnification against Federal Pipe from those claims it otherwise assigned to the Trust. Therefore, I agree that the Trust has no standing to pursue this claim, and I dismiss it.

F.  Count VI: Violation of Non-Competition Clause

Count VI of the Trust's complaint alleges that Federalpha violated Paragraph 5.4.4 of the Operating Agreement, a non-competition provision, by operating a steel service center in violation of that provision.  That provision provides that Alpha and Federal Pipe agree "that neither of them shall directly or indirectly, through an Affiliate or otherwise, construct, acquire, open or operate a steel service center facility or other facility engaged in the Principal Business of [Federalpha]" within the territorial boundaries of the United States.  This same provision also specifically provides that Federalpha

> shall have the right, but not the obligation, to seek and obtain a temporary restraining order and/or a preliminary injunction and/or permanent injunction to restrain and enjoin further violation of the covenant not to compete expressed herein, and may seek and obtain such other, further or different relief as may be available at law or in equity.

Setting aside the improper factual arguments in defendants' motion to dismiss, their remaining arguments are also without merit.  Defendants argue that this claim is barred because it was released by the Withdrawal Agreement, and because it was not reserved in the reorganization plan.  As discussed above, however, whether or not the Withdrawal Agreement was valid is an issue to be litigated in this case, and the reorganization plan therefore properly reserves this claim.

30

Defendants' best argument is that the Operating Agreement was entered into between Alpha and Federal Pipe and Federalpha was not a party to it, so the Trust has no standing to assert this claim. The Trust responds that Federalpha was a third-party beneficiary to the Operating Agreement and therefore the Trust does have authority to assert this claim. Under Illinois law, a non-party to a contract may sue for breach of that contract if the contract was entered into for the direct benefit of that non-party. *See Olson v. Etheridge*, 177 Ill.2d 396, 404, 226 Ill. Dec. 780, 783, 686 N.E.2d 563, 566 (1997) (internal citation omitted). The right of a non-party to sue on a contract "must affirmatively appear from the language of the instrument when properly interpreted and construed." *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E.2d 498, 501 (1931). In other words, the parties must have manifest in the contract an intention to confer a benefit upon the third party. *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 54, 51 Ill. Dec. 674, 679, 421 N.E.2d 182, 187 (1981). Here, Federalpha is a third-party beneficiary at least for the non-competition provision of the Operating Agreement at issue in this claim. Section 5.4.4 of the Operating Agreement is a non-competition clause preventing either member of Federalpha from operating a competing steel service facility or other facility engaged in the same business as Federalpha. This provision also explicitly gives Federalpha the right to seek injunctive relief or "other, further

31

or different relief as may be available." By this language the parties to the Operating Agreement unequivocally intended to confer a benefit (the right to enforce this provision of the Operating Agreement) on Federalpha. Therefore, the Trust has the right to pursue this claim.

Defendants further urge that this claim is defective because the Trust seeks damages from Federal Pipe for this breach, although defendants contend that the Operating Agreement only gives Federalpha the right to seek injunctive relief for any breaches of this provision. This is a strained reading of Paragraph 5.4.4. The provision clearly allows the Trust (acting on behalf of Federalpha) to obtain injunctive relief or "other, further or different relief as may be available at law or in equity." This clearly includes seeking damages, which are relief available at law.

For these reasons, I deny defendants' motion to dismiss Count VI.

G.   Count VII: Violation of 805 ILL. COMP. STAT. 180/15-3

In Count VII of its complaint the Trust alleges that Federal Pipe breached its fiduciary duty to Federalpha by undercapitalizing Federalpha, failing to make required contributions of property and services, withdrawing from Federalpha following the Lock Up Agreement, and formally withdrawing pursuant to the Withdrawal Agreement. It further alleges that Federal Pipe owed a duty to

Federalpha's creditors because Federalpha was insolvent during "most if not all of its pre-petition existence," so that these same acts were a violation of Federal Pipe's duty to Federalpha's creditors.

Defendants raise two arguments in support of dismissing this claim. First, defendants note that the actions constituting the purported breach of Federal Pipe's fiduciary duties are the same actions that form the basis of other of claims, and argue that none of these are actionable or proper. However, as discussed above, I find that Count V does state a claim against Federal Pipe for wrongful dissociation from Federalpha, so the Trust's breach of fiduciary duty claim could at least be based on Federal Pipe's *de facto* and formal withdrawals from Federalpha.

Second, defendants argue that because Federalpha was a manager-managed LLC, the Trust cannot allege that Federal Pipe had any duty toward Federalpha under the relevant Illinois statutes. As discussed above, taking the facts as alleged in the Trust's complaint as true, it is possible that Federalpha is treated as a member-managed LLC for purposes of the relevant Illinois statutes. Therefore, it is possible that Federal Pipe, as a member of Federalpha, had some fiduciary duty toward Federalpha. Consequently, I deny defendants' motion to dismiss this claim.

## H. Counts XI and XII: Intentional and Negligent Misrepresentation and Omission

Finally, the Trust has brought claims against Federal Pipe for intentional and negligent misrepresentation and omission, alleging that Federal Pipe made certain misrepresentations and omissions to Federalpha's creditors to induce them to extend trade credit to Federalpha. Defendants argue that the Trust has no standing to pursue these claims because they belong to Federalpha's individual creditors and not to Federalpha. As discussed above concerning Count IV, the Trust may not bring personal claims of creditors, including claims where the injury is not common to both Federalpha and its creditors. *Koch Ref.*, 831 F.2d at 1349. Although the Trust generally contends that these claims belong to Federalpha's creditors in general and that the Trust therefore has standing to assert these claims, these claims only belong to Federalpha's creditors and not to Federalpha. These representations did not injure Federalpha, but only those creditors to whom Federal Pipe purportedly made misrepresentations. *See id.* Therefore, the Trust does not have standing to pursue these claims, and I grant defendants motion to dismiss Counts XI and XII.

## IV.

In addition, the Trust has brought a claim against Leroux and Garneau, Count VIII, for breach of their fiduciary duties. The Trust allege that Leroux and Garneau, as directors of FA, owed fiduciary duties of loyalty, good faith, and fair dealing to

34

Federalpha, and to Federalpha's creditors since Federalpha was insolvent. The Trust alleges that Leroux and Garneau breached these duties by allowing Federalpha to be undercapitalized, allowing Federal Pipe to forego making required contributions of property and services, and participating in Federal Pipe's *de facto* withdrawal from Federalpha following the Lock Up Agreement. Defendants argue that Leroux and Garneau could have no fiduciary duties to Federalpha by virtue of being two of the four directors of the corporation that managed Federalpha. Defendants contend that there was no written agreement placing these duties on Leroux and Garneau, and no principal of law would bestow fiduciary duties in such a situation.

The Trust responds by citing cases holding that corporate officers and directors have a fiduciary relationship toward their corporation and the shareholders of their corporation. *See Salem Servs., Inc. v. Hussain (In re Hussain)*, 308 B.R. 861, 867 (Bankr. N.D. Ill. 2004) (quoting *Brown v. Tenney*, 125 Ill.2d 348, 360, 126 Ill. Dec. 545, 550, 532 N.E.2d 230, 235 (1988)). It is true that Leroux and Garneau, as directors of FA, had fiduciary duties toward FA. And, because Federalpha was a shareholder of FA, Leroux and Garneau had fiduciary duties to Federalpha. *See id.* Leroux and Garneau's fiduciary duties to Federalpha were in the context of their role as directors of FA. If Leroux and Garneau directed FA in a manner that damaged Federalpha's interests as a shareholder of

35

FA, then Federalpha would have a cause of action against Leroux and Garneau for failing to operate FA in the best interests of Federalpha, the sole shareholder. Here, the Trust contends that Leroux and Garneau violated their duty to Federalpha by allowing Federalpha to be undercapitalized, allowing Federal Pipe to not make contributions to Federalpha, and by participating in Federal Pipe's withdrawal from Federalpha. At least the allegation that Leroux and Garneau participated in Federal Pipe's withdrawal from Federalpha is an allegation pertaining to Leroux and Garneau's duties as directors of FA, and potentially a violation of their duty of loyalty to Federalpha as a shareholder of FA. For this reason, I find that the Trust has stated a claim for breach of fiduciary duty against Leroux and Garneau.[10]

V.

Finally, the Trust has brought a claim against RMI for inducement of breach of fiduciary duty. In Count X, the Trust alleges that RMI induced Federal Pipe, Leroux and Garneau to breach

---

[10]As discussed above, the Trust has not properly alleged a claim against Federal Pipe for failing to contribute goods or services to Federalpha or for undercapitalizing Federalpha. The Trust has not alleged, and the documents attached to its complaint do not demonstrate, that Federalpha had a duty to capitalize Federalpha or to contribute goods or services to it. For this reason, it is difficult to see, and the Trust has not articulated in its response to defendants' motion to dismiss, how Garneau and Leroux would have had a duty as directors of FA to force Federal Pipe to take actions that Federal Pipe itself had no duty to undertake. For this reason, these types of purported breaches of Leroux and Garneau's fiduciary duties are not breaches.

their fiduciary duties to Federalpha as set forth in Counts VII and VIII. Again, the defendants' only argument why this claim should be dismissed is that the Trust has no claim that Federal Pipe, Leroux and Garneau breached their fiduciary duties. Since I find that the Trust has stated claims against Federal Pipe, Leroux and Garneau for breach of their fiduciary duties, the Trust may proceed with its claim against RMI for inducement to breach those fiduciary duties.

VI.

For the above reasons, defendants' motion to dismiss is granted in part and denied in part. I grant defendants' motion as to Counts III, IV, XI and XII, and dismiss those claims. The remainder of defendants' motion to dismiss is denied.

**ENTER ORDER:**

Elaine L Bucklo

**Elaine E. Bucklo**
United States District Judge

Dated: December $\underline{8}$, 2006

37