**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FEDERALPHA STEEL LLC CREDITORS' TRUST,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 06 C 3188 |
| **FEDERAL PIPE & STEEL CORPORATION, RUSSEL METALS, INC., GILLES LEROUX, and SYLVAIN GARNEAU,** | ) ) ) ) ) |
| Defendants. | ) ) |
| **FEDERAL PIPE & STEEL CORPORATION,** | ) ) ) |
| Defendant, Third-Party Plaintiff | ) ) ) |
| v. | ) ) |
| **PHA STEEL, LLC,** an Illinois limited liability company, | ) ) ) |
| Third-Party Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Before me is a motion brought under Federal Rules of Civil Procedure 12(b)(6) and 14(a) by third-party defendant PHA Steel, LLC ("PHA Steel") to dismiss the third-party complaint brought by defendant Federal Pipe & Steel Corporation ("Federal Pipe"). Federal Pipe's complaint brings claims for indemnification and restitution, rescission, and unjust enrichment against PHA Steel. PHA Steel's motion to dismiss contends that Federal Pipe's complaint does not state a basis for PHA Steel's derivative

liability as Rule 14(a) requires, and that by agreement Federal Pipe has released any and all claims it may have had against PHA Steel. For the reasons stated in this opinion, I deny PHA Steel's motion.

I.

In assessing PHA Steel's motion to dismiss, I must accept all well-pled facts in Federal Pipe's third-party complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to Federal Pipe. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of a claim is proper if a plaintiff has not, at minimum, made sufficient factual allegations to raise a right to relief above a "speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citations omitted). Written instruments attached to the complaint are considered to be part of the complaint, so I may consider the September 30, 2003 agreement (the "Withdrawal Agreement") that Federal Pipe has attached to its complaint. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

Under this standard, the facts relevant to PHA Steel's motion are as follows: Federal Pipe is a Delaware corporation with its principal place of business in Detroit, Michigan. (Compl. ¶ 1.) PHA Steel is an Illinois limited liability company with its principal place of business in Hammond, Indiana. (*Id.* at ¶ 2.) On

2

October 20, 2003, Federal Pipe, an entity identified as "PHA LLC," Alpha Steel Corporation ("Alpha") and Federalpha Steel LLC ("Federalpha") executed a Withdrawal Agreement.[1] (*Id.* at ¶ 12.) The Withdrawal Agreement provides that Alpha and Federal Pipe formed Federalpha but "no longer desire[d] to jointly own" it. (Withdrawal Agreement at 1.) It further provides that the parties' intention was to release any claims against one another that might exist so that the parties "shall have no claims against one another . . . by reason of any matter related to" Federalpha. (*Id.* at ¶ 18.) Federal Pipe alleges that this provision was "a critical and crucial part of the consideration" for which it bargained in entering into the Withdrawal Agreement. (Compl. ¶ 17.)

As part of the Withdrawal Agreement, Federal Pipe agreed to take certain actions. First, pursuant to the Withdrawal Agreement Federal Pipe assigned its membership interest in Federalpha and its stock interest in FA Steel Management, Inc. ("FA Steel") to Alpha. (Withdrawal Agreement ¶ 3(h).) Federal Pipe also assigned the subordinated debt that it was owed by Federalpha (approximately $2.2 million) to PHA. (*Id.*) The Withdrawal Agreement also requires Federal Pipe to pay Federalpha $170,000 and to assume various other obligations. (*Id.* at ¶ 3.) Included in these other obligations is an obligation for Federal Pipe to fund a $1 million

---

[1]The Withdrawal Agreement provides that it is to be "construed in accordance with the laws of the State of Illinois." (Withdrawal Agreement ¶ 21.)

certificate of deposit (the "Federal CD"). (*Id.* at ¶ 3(a).) The Federal CD was to serve as collateral for Federal Pipe's "non-recourse guaranty" until Federalpha's indebtedness to certain banks, lenders of Federalpha, was satisfied in full. (*Id.*) At that time the Federal CD was to be deposited into an escrow account for the benefit of both Federal Pipe and PHA LLC, subject to certain indemnification provisions. (*Id.*) Any interest earned on the account was also to be paid in equal portions to Federal Pipe and PHA LLC. (*Id.*) Federal Pipe alleges that, at present, Federalpha's lenders have been paid in full, and that Federal Pipe's $1 million contribution remains in an escrow account. (Compl. ¶ 20.) It further alleges that the escrow account has been distributed on a 50/50 basis between Federal Pipe and PHA Steel, and that PHA Steel's distribution has been approximately $25,376. (*Id.*)

In addition to Federal Pipe's obligations under the Withdrawal Agreement, the Withdrawal Agreement further provides that PHA LLC indemnify Federal Pipe by reason of

> (I) Any claim or cause of action to the extent that it arises from any of the provisions of this agreement, including the release of [Federal Pipe] from its guaranty obligation to the Banks or [Federal Pipe's] funding of the Certificate of Deposit as provided in paragraph 3(a) above, or
>
> (ii) the liabilities expressly assumed by Alpha in paragraph 5 above (the "Indemnified Claims") except that in the

4

> case of any Indemnified Claims arising under subparagraph 14(a)(I) above, [Federal Pipe] shall bear up to the first $100,000 of any such loss, damages or expenses, including reasonable attorneys' fees, and PHA shall be responsible for any such loss, damages or expenses incurred by [Federal Pipe] in excess of the amount of $100,000. Any monetary indemnification obligation of PHA under subparagraph 14(a)(I) above shall be satisfied only through a payment to [Federal Pipe] from the Escrowed Funds and is not otherwise payable to PHA.

(Withdrawal Agreement ¶ 14(a).) Also under the Withdrawal Agreement, Federal Pipe

> shall be entitled to payment from the Escrowed Funds for the amount of any final judgment against it on an Indemnified Claim, as well as the amount of its costs of defense of any Indemnified Claim, including reasonable attorneys' fees, less, in the case of one or more Indemnified Claims arising under subparagraph 14(a)(I) above, the aggregate sum of $100,000 with respect to all such Indemnified Claims.

(*Id.* at ¶ 14.)

Federal Pipe alleges that "PHA LLC," the entity that was a party to and referenced in the Withdrawal Agreement, is not the same entity as the present defendant PHA Steel. Federal Pipe alleges that PHA LLC was never incorporated, and instead that certain principals of Alpha incorporated an Illinois entity under the name of PHA Steel, and that PHA Steel has "purported to exercise the rights of PHA under the Withdrawal Agreement." (Compl. ¶ 14.)

5

Federal Pipe also alleges that the day after the execution of the Withdrawal Agreement, Federalpha filed a bankruptcy proceeding. Federalpha Steel LLC Creditors' Trust (the "Trust") then filed a complaint against defendants Federal Pipe, Russel Metals, Inc., Gilles Leroux, and Sylvain Garneau.[2] That complaint alleged that Federal Pipe operated a network of steel service centers throughout the United States. (Trust Compl. ¶¶ 6, 11.) In 2002 it partnered with Alpha to organize Federalpha, which would own and operate three steel service centers in Illinois, Michigan and Indiana. (*Id.* at ¶ 14.) Federal Pipe and Alpha executed an operating agreement for Federalpha that designated FA Steel to manage Federalpha. (*Id.* at ¶¶ 15-16.) However, the Trust alleges that while the operating agreement gave FA Steel exclusive management authority over Federalpha, "Federalpha actually was run as a joint venture or partnership in which Federal Pipe exercised active *de facto* management authority over Federalpha." (*Id.* at ¶ 20.) The Trust also alleges that Federal Pipe exercised control over Federalpha by unconditionally guaranteeing Federalpha's obligations to its lenders and by helping Federalpha obtain trade credit. (*Id.* at ¶¶ 23-27.) The Trust further alleges that eventually Federal

---

[2]Although this opinion summarizes the key aspects of the Trust's allegations, the Trust's lengthy complaint is summarized in more detail in my opinion ruling on the defendants' motion to dismiss. *See Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, No. 06 C 3188, 2006 WL 3626767, at *1-3 (N.D. Ill. Dec. 8, 2006).

Pipe made a "*de facto* withdrawal from Federalpha, ceasing to honor its duties and obligations under the Operating Agreement, and otherwise terminating its involvement with Federalpha." (*Id.* at ¶ 44.)

The Trust's complaint brings several causes of action against Federal Pipe, including avoidance of a release for actual fraud (Count I), constructive fraud under 11 U.S.C. §§ 548(a)(1)(A) and (B) (Count II), breach of the Withdrawal Agreement by failing to assume certain of Federalpha's pension liabilities (Count III), breach of the Illinois Limited Liability Company Act ("Illinois LLC Act") for failing to make required contribution of property and services under 805 Ill. Comp. Stat. 180/20-5(c) (Count IV), breach of the Operating Agreement by wrongfully dissociating from Federalpha and by violating the Operating Agreement's non-competition clause (Counts V and VI), breach of its fiduciary duties under the Illinois LLC Act, 805 Ill. Comp. Stat. 180/15-3 (Count VII), and intentional and negligent misrepresentation and omission to creditors regarding Federalpha's credit worthiness (Counts XI and XII). The defendants to the Trust's complaint subsequently filed a motion to dismiss which I granted in part and denied in part. *See Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, No. 06 C 3188, 2006 WL 3626767 (N.D. Ill. Dec. 8, 2006). I dismissed Counts III, IV, XI and XII, but allowed Counts I, II, V, VI, and VII against Federal Pipe to stand. *Id.*

Federal Pipe then answered the complaint and filed its third-party complaint against PHA Steel. Its third party complaint brings two claims against PHA Steel: PHA is obligated under the Withdrawal Agreement to indemnify Federal Pipe for any final judgment entered against Federal Pipe as part of the Trust's original complaint in this matter (Count I) and, in the event I determine that the Withdrawal Agreement is not valid, PHA Steel is obligated to return the consideration Federal Pipe paid it as part of the Withdrawal Agreement, as well as any benefit it earned as result of the Withdrawal Agreement, under theories of restitution, rescission, and unjust enrichment (Count II). PHA's motion to dismiss the third-party complaint followed.

## II.

PHA Steel's motion to dismiss argues that I should dismiss Count I because Federal Pipe does not allege that PHA Steel's liability is derivative of its own liability to the Trust, as Federal Rule of Civil Procedure 14 requires to raise such a claim in a third-party complaint. Federal Rule of Civil Procedure 14(a) sets forth the circumstances in which a defendant may implead a third party defendant. In relevant part, it provides that a third party plaintiff may serve a third-party complaint on "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." FED. R. CIV. P. 14(a). Rule 14 therefore

allows a defendant/third-party plaintiff to implead a third-party defendant when the third party defendant's liability to the third-party plaintiff is derivative of the third-party plaintiff's liability to the original plaintiff. *See Hartford Accident and Indem. Co. v. Sullivan*, 846 F.2d 377, 381 (7th Cir. 1988); *Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, at *13 (N.D. Ill. Feb. 22, 2005); *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F. Supp. 909, 915 (N.D. Ill. 1989). The liability must be derivative; "[t]he fact that the third-party claim arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used 'as a way of combining all controversies having a common relationship.'" *Forum Ins. Co.*, 711 F. Supp. at 915 (quoting 6 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1442 (1971)). Rule 14(a) "is designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted" and "guarantees consistent results" and "saves the time and cost involved in the needless repetition of evidence at a subsequent trial." *Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975).

PHA Steel contends that the liability Federal Pipe seeks to impose upon it is not derivative. Count II is clearly not derivative; it seeks the return of consideration Federal Pipe paid to PHA Steel and any benefit PHA Steel received as part of the Withdrawal Agreement. However, Rule 18 clearly states that a party

9

asserting a third-party claim "may join, either as independent or as alternate claims, as many claims, legal, equitable or maritime, as the party has against an opposing party." FED. R. CIV. P. 18(a). So I must only consider whether Count I is a proper derivative claim brought under Rule 14(a).

PHA Steel argues that its purported liability to Federal Pipe is not derivative of Federal Pipe's liability to the Trust because the Trust makes specific allegations about particular actions that Federal Pipe took that harmed the Trust, and "[w]hether PHA Steel is liable to Federal Pipe in the third-party action is not dependent on the outcome of the underlying actions brought by" the Trust. (PHA Steel Memo. in Support of Mot. to Dismiss at 5.) However, this is not the case. Federal Pipe's third-party complaint alleges that PHA Steel is obligated under the Withdrawal Agreement to indemnify Federal Pipe for any final judgment entered against Federal Pipe on the Trust's original complaint. (Compl. ¶ 30.) The claims against Federal Pipe that still remain in the Trust's original lawsuit are for avoidance of a release for actual fraud; constructive fraud under 11 U.S.C. §§ 548(a)(1)(A) and (B); breach of the Operating Agreement by wrongfully dissociating from Federalpha and by violating the Operating Agreement's non-competition clause; and breach of its fiduciary duties under the Illinois LLC Act. *See Federalpha Steel LLC Creditors' Trust*, 2006 WL 3626767, at *15. Although PHA Steel contends that the

allegations in these claims are not related to the indemnification provision of the Withdrawal Agreement in which Federal Pipe brings its third-party complaint, I conclude that they are.

The interpretation of paragraph 14 of the Withdrawal Agreement, on which Federal Pipe brings a contractual indemnification claim, is a question of law. *See Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006) (holding that the interpretation of an unambiguous contract is a question of law). With certain qualifications, paragraph 14 of the Withdrawal Agreement provides that PHA LLC agrees to indemnify Federal Pipe from all liability by reason of (1) any claim or cause of action arising from any provision of the Withdrawal Agreement, or (2) the liabilities expressly assumed by Alpha in paragraph 5 of the Withdrawal Agreement. Counts I and II of the Trust's complaint are for avoidance of releases Federalpha purportedly gave Federal Pipe in the Withdrawal Agreement. (Trust Compl. ¶¶ 84-98.) Under the Withdrawal Agreement, PHA LLC, and therefore PHA Steel,[3] agreed to indemnify Federal Pipe for liability arising from any provision of the Withdrawal Agreement.

---

[3]As discussed in more detail below, Federal Pipe's third-party complaint alternatively alleges that PHA LLC and PHA Steel are not the same entity, so that the Withdrawal Agreement is not valid. PHA Steel argues in response that it assumed the liabilities of PHA LLC. Therefore, even though there is an allegation that these entities are distinct, for purposes of analyzing Count I of Federal Pipe's third-party complaint I may assume that PHA LLC's obligations to Federal Pipe under the Withdrawal Agreement are also obligations of PHA Steel to Federal Pipe.

11

Therefore, PHA Steel's potential liability to Federal Pipe is derivative of Federal Pipe's liability for Counts I and II. *See, e.g., Colton*, 527 F.2d at 299 (analyzing Rule 14 liability in context of contractual indemnification). Count V of the Trust's complaint alleges that Federal Pipe wrongfully dissociated itself from Federalpha at least in part by withdrawing from Federalpha through the Withdrawal Agreement. (Trust Compl. ¶ 119.) Count VII alleges that Federal Pipe breached its fiduciary duties to Federalpha at least in part by entering into the Withdrawal Agreement. (*Id.* at ¶ 135.) Pursuant to the same indemnification provision of the Withdrawal Agreement, if Federal Pipe is liable to the Trust for wrongful dissociation or breach of its fiduciary duties through the Withdrawal Agreement, then PHA Steel's liability to Federal Pipe is derivative of Federal Pipe's potential liability to the Trust.[4]

---

[4] Count VI of the Trust's complaint alleges that Federal Pipe breached the Operating Agreement by operating steel service centers in violation of the non-compete provisions of the Operating Agreement. (Trust Compl. ¶¶ 123-27.) It is not obvious from the Trust's complaint, and Federal Pipe has not articulated, how this claim is connected to the Withdrawal Agreement or to PHA Steel's promise to indemnify Federal Pipe for any of its liabilities arising out of the Withdrawal Agreement. It is possible that PHA Steel indemnified Federal Pipe for this claim pursuant to paragraph 14(a)(ii) and paragraph 5 of the Withdrawal Agreement, given that Federal Pipe alleges that Alpha incorporated PHA Steel and in paragraph 30 of its complaint references paragraph 14(a)(ii) of the Withdrawal Agreement. Paragraph 14(a)(ii) of the Withdrawal Agreement states in relevant part that PHA LLC agrees to indemnify Federal Pipe for any liabilities "expressly assumed by Alpha in paragraph 5" of the Withdrawal Agreement. Paragraph 5 in turn states that Alpha agrees to indemnify Federal Pipe "pursuant to

12

For these reasons, I deny PHA Steel's motion to dismiss Count I of Federal Pipe's third-party complaint.

### III.

PHA Steel also contends that I should dismiss Count II because Federal Pipe released any and all claims it may have had against PHA Steel in the Withdrawal Agreement so that it may not now bring any claims for restitution, rescission, or unjust enrichment against PHA Steel. This argument is without merit. As I concluded in ruling on Federal Pipe's motion to dismiss, based on the allegations in the Trust's complaint there is a question in this case whether the Withdrawal Agreement is a valid agreement. The Trust's complaint puts this in dispute because it contends that the Withdrawal Agreement was improperly executed and is therefore invalid. *See Federalpha Steel LLC Creditors' Trust*, 2006 WL 3626767, at *6. Additionally, Federal Pipe's third-party complaint contends that PHA Steel cannot enforce the Withdrawal Agreement because it was entered into by PHA LLC, a separate entity that Federal Pipe alleges never even formally existed. (Compl. ¶ 14.)

---

Section 6.5.10 of the Operating Agreement as if Alpha had acquired all of [Federal Pipe's] membership rights and interests thereunder." However, without further argument or explanation the interpretation of paragraphs 5 and 14(a)(ii) of the Withdrawal Agreement and their application to Count VI of the Trust's complaint are unclear. Still, given that Federal Pipe has shown a basis for PHA Steel's potential derivative liability for the other of the Trust's claims against Federal Pipe, this does not deprive Federal Pipe of the ability to implead PHA Steel for the derivative liability that Federal Pipe has demonstrated might exist.

Although there may be factual circumstances which would allow PHA Steel to adopt the obligations of PHA LLC or otherwise render its participation in the Withdrawal Agreement valid, these issues may not be resolved on a motion to dismiss. Taking the well-pled allegations as true, Federal Pipe has properly alleged that the Withdrawal Agreement is unenforceable. I therefore deny PHA Steel's motion to dismiss Count II.

IV.

For the above reasons, PHA Steel's motion to dismiss Federal Pipe's third-party complaint is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 26, 2007